No. 44,944

GEORGE H. WALLERIUS, *Appellee*, v. ROBERT HARE, *Appellant*, and _____ HARE, his wife, whose first name is unknown, MARY ROE and RICHARD DOE, the latter two defendants' true names being unknown, Defendants.

(438 P. 2d 65)

Opinion filed March 9, 1968.

*John Q. Royce*, of Salina, argued the cause, and *E. S. Hampton, H. H. Dunham, Jr., H. G. Engleman, C. Stanley Nelson, Jack N. Stewart* and *Tom W. Hampton*, all of Salina, were with him on the brief for the appellant.

*James T. Graves*, of Salina, argued the cause, and *C. L. Clark, James P. Mize* and *Aubrey G. Linville*, all of Salina, were with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: This appeal is from a judgment ordering specific performance of an agreement to sell land.

The case previously appeared in this court on an order sustaining a demurrer to the petition. (See *Wallerius v. Hare*, 194 Kan. 408, 399 P. 2d 543.) The case was returned to the court below, tried and a decree of specific performance was entered in favor of the plaintiff, George H. Wallerius. The defendant, Robert Hare, appeals from this decree.

The facts alleged in plaintiff's petition are set forth in the previously reported opinion.

In the following statement of facts the plaintiff-appellee, George H. Wallerius, will be referred to as the purchaser or as Wallerius. The defendant-appellant, Robert Hare, will be referred to as the owner or as Hare.

The facts developed at the trial of the case generally parallel the allegations of the petition. The evidence indicates that Hare owned 478 acres of grassland in Ottawa County, Kansas. He was a resident of the State of California and had been renting the land on an annual basis for many years. Cattle were placed in the pasture by the renter from May to November. A real estate broker learned that this land might be for sale and he wrote Hare concerning the possibility of a listing. Thereafter Wallerius inquired of the broker about grassland in the area which might be for sale. While Wallerius was in the office the broker called the owner by telephone and discussed a possible sale of this land. An agreement for warranty deed was prepared by the broker and mailed to Hare on February 20, 1962. The agreement had been signed by the intended purchaser, Wallerius, and was accompanied by an earnest money check in the sum of $5,000. This agreement provided for delivery of a warranty deed to the purchaser upon approval of title and contained no restrictions against assignment. Possession of the land was to be delivered on or before April 1 and the contract was to be accepted by March 1. The purchase price was $28,000.

On February 28, after receiving the agreement and check, Hare sent the following telegram to the broker:

"Accept offer Wallerius providing obtain cancellation pasture lease from Nelson. Any litigation lawyers fee or damages paid by purchaser."

At this same time the owner, Hare, sent a telegram to the renter, Nelson, it read:

"Sold pasture; must cancel lease for 1962."

The telegram from Hare to the broker was turned over to Wallerius and on March 1 at 12:53 p. m. Wallerius sent the following telegram to Hare:

"Accept counter proposal via way of telegram in connection with contract to purchase land in Ottawa County Kansas letter following."

This telegram was received by Hare on March 1 at 2:00 p. m., and at 7:45 p. m. he sent the following telegram to the broker in an effort to cancel the sale:

"Rec'd offer today $32,000 net to me. Therefor withdrawing land from sale. Thanks for help. Will contact you when ready to sell."

The appellant, Robert Hare, complains of various findings and rulings of the trial court and insists he is entitled to judgment as a matter or law or in the alternative to a new trial. The errors complained of by appellant are grouped under four points.

The first point raised is the trial court erroneously interpreted the previous opinion of this court as precluding a finding there was no contract consummated.

We have reviewed the record bearing on the question, including the facts admitted by appellant in the pre-trial conference, the colloquy between court and counsel before the trial, and the findings made by the court at the conclusion of the evidence and find no merit in this contention.

The record shows no limitations were placed upon appellant's evidence. The trial court heard all evidence presented on the issues and made a specific finding the contract was consummated. It is true the trial judge questioned the sufficiency and effect of the writings attached to the petition to constitute a binding agreement to sell but, when the writings were established by stipulations at pre-trial conference, he correctly applied the law as set forth in the previous opinion.

The second point raised by appellant concerns the effect of the final telegram from the appellee and of the letter which was posted later.

The exact time a contract becomes consummate is highly important in determining the rights and responsibilities of the parties.

In *Wallerius v. Hare,* supra, the agreement shown by these writings now in evidence was examined. The effect of the provision relating to cancellation of the so-called lease was considered on pages 411 and 412 of the opinion. There we said:

"The appellees contend that the cancellation of the lease was a condition precedent to the formation of a contract and that it was essential that appellant plead definite fulfillment of the condition, *i. e.,* that the lease was actually cancelled.

"The appellant contends that the condition contained in appellees' telegram and accepted by appellant was incorporated in the original offer and a complete contract was consummated but that the cancellation of the lease was a condition precedent to requiring performance of the contract which was complete in all of its terms. Appellant further contends that having bound himself to pay any expenses incurred, or damages assessed against appellees in their

attempt to obtain cancellation of the pasture lease, they were bound to exercise a reasonable effort to cancel the lease.

"We are inclined to agree with appellant's contention."

We believe the construction placed upon this provision is applicable at this time. The requirement of cancellation of the lease was a condition precedent to requiring performance of the contract as distinguished from formation of a contract. When this condition precedent to enforcement was accepted by Wallerius on March 1 and communicated to Hare at 2:00 p. m. of that day a contract resulted. Thereafter it was not legally possible for Hare to withdraw the land from sale.

The facts disclosed by the evidence were substantially the same as set forth in the petition and the exhibits attached. We adhere to the views expressed in our previous opinion on this point.

The appellant next points out the letter which followed appellee's telegram of March 1 contained a deed to a third party not previously mentioned in the contract.

This letter is partially set forth in our previous opinion (194 Kan. p. 410). The additional portion of the letter requesting the deed reads:

"I enclose General Warranty deed from you and your wife, whose name I do not have, so you can either type her name in or we will type it on its return, and of course both you and she will have to sign before a Notary Public. You will notice the deed is in favor of Wayne E. and Argel O. Weeks, and I enclose herewith authorization from George H. Wallerius to execute deed in favor of said parties. Mr. Wallerius will then obtain his deed from Weeks & Weeks. (There was a trade involved between this and some Saline County land, whereby a tax savings was obtained.)

"From date of the receipt of the abstract, I would anticipate approval of title and final settlement in approximately ten days.

"I wish to thank you for your fine cooperation in connection with this transaction."

The appellant says this request had the effect of attempting to insert a new provision in the negotiations thus qualifying the acceptance of the condition precedent and preventing consummation of a contract. We are not able to agree with appellant.

We note that the agreement for warranty deed proposed by the appellee and accepted by the appellant contained no provision to restrict assignment of the contract by either party. It was a sale for cash and would not subject the appellant to the uncertainty of installment payments. There is no contention that this was a con-

trolled sale partially based upon consideration of blood relationship, friendship or other factors.

It is noted that when the request for the deed to a third party was not honored the appellee withdrew his request. This was not an attempt to change any provision of the contract. The appellee merely desired to designate another person to be named grantee in the deed. The letter which followed appellee's telegram in no way changed or qualified the acceptance of the condition as to cancellation of the lease.

*Williston on Contracts*, Third Edition, § 79 states:

"Frequently an offeree, while making a positive acceptance of the offer, also makes a request or suggestion that some addition or modification be made. So long as it is clear that the meaning of the acceptance is positively and unequivocally to accept the offer whether such request is granted or not, a contract is formed. So an inquiry as to the meaning of an offer, or a request for an explanation, will not invalidate a positive acceptance; nor will a request for modification of the offer coupled with an unqualified acceptance not dependent on the granting of the request. . . ."

In *Johnson v. Furnish*, 29 Kan. 523, under facts quite similar to our present case it was said:

"Again, the contract was no fraud upon Johnston; neither was there any imposition practiced upon him in directing the deed to Luther Sperry. It was nothing to him as to who should be named as grantee in the deed. All that he had a right to insist upon was the $475 in cash, and whether the purchaser wanted the deed made to himself, his wife, a child, or a stranger, was a matter which in no manner concerned the vendor, and gave him no ground of complaint." (p. 526.)

This statement in the above case was quoted with approval in *Quinton v. Mulvane*, 71 Kan. 687, 689, 81 Pac. 486. In *Bennett v. Cummings*, 73 Kan. 647, 85 Pac. 755, the court examined certain post-contractual discussions between the parties and determined they in no way destroyed the binding effect of a contract already entered into. Post-contractual discussions might lead to concessions but only as a matter of grace upon one side or the other.

Bearing upon collateral or immaterial matters such as inquiries, requests and suggestions postdating the contract the rule is stated in 17 Am. Jur. 2d Contracts § 65 as follows:

"It must not be inferred, from the rule that an acceptance must be unconditional, that the mere mention in a letter of acceptance of matters upon which the acceptance of the proposition does not depend prevents the contract from being completed. There is authority to the effect that although an acceptance which introduces a new term as part of the proposed contract is insufficient,

the mere addition to the acceptance of a collateral or immaterial requisition not warranted by the terms of the offer does not prevent the contract from being completed. Thus, immaterial or minor differences or variances between the offer and acceptance will not prevent the formation of a contract. . . ."

(See also 17 C. J. S. Contracts § 36 (2), p. 654 on the effect of subsequent acts.)

Under the facts and circumstances of the present case the request for a deed to a third party was a matter collateral to the contract and did not amount to a counter proposal.

Appellant next urges that the property was subject to a pasture lease not ending until November 1, 1962, which prevents enforcement of the agreement to sell.

The amended petition asking for specific performance of the agreement to sell was not filed until March 18, 1963. In the petition appellee states:

". . . Plaintiff waives the defendant's obligation to obtain cancellation of Carl Nelson's claim of lease against the subject property, and accepts the land subject to whatever valid lease or tenant's rights there was outstanding against said property in favor of the said Carl Nelson on or about March 1, 1962. . . ."

We hold in this opinion that the provision for cancellation was a condition precedent to requiring performance. Performance of the condition was waived by appellee and specific performance should not be refused on account thereof.

In addition the trial court found the former renter, Carl Nelson, had no right to the premises for 1962. The finding is adequately supported by the evidence but in view of what has already been said it is unnecessary for us to detail that evidence.

We have carefully examined the other contentions made but we find nothing in the record to justify the relief requested by appellant.

The judgment is affirmed.